UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **RACHELE WALKER**, | Case No. 5:12 CV 1788 |
| Plaintiff, | Magistrate Judge James R. Knepp II |
| v. | MEMORANDUM OPINION AND ORDER |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | |

### INTRODUCTION

Plaintiff Rachele Walker seeks judicial review of Defendant Commissioner of Social Security's decision to deny Supplemental Security Income (SSI). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons given below, the Court affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

On June 17, 2009, Plaintiff filed an application for SSI claiming she was disabled due to bi-polar disorder, schizophrenia, and "other mental problems." (Tr. 163-65, 184). She alleged a disability onset date of June 4, 2008. (Tr.163). Her claims were denied initially and on reconsideration. (Tr. 81-80). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 113). Plaintiff (represented by counsel) and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 10, 34). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the

Commissioner. (Tr. 1); 20 C.F.R. §§416.1455, 416.1481. On July 12, 2012, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

<u>Vocational History and Daily Activities</u>

Born February 4, 1970, Plaintiff was 40 years old on the date of the ALJ hearing. (Tr. 23, 30, 163). She completed four years of college and a two-year nursing program, and had past relevant work experience as a nurse, waitress, and cleaner. (Tr. 56, 217, 243, 246). She stopped working in 2003. (Tr. 184).

In a disability report, Plaintiff said she could "take care of [her] personal needs but she stayed home a lot." (Tr. 198). She also indicated she had no problems dressing, bathing, or grooming. (Tr. 255). Plaintiff reported she woke up, ate, watched television, sometimes made her bed, went to meetings, watched more television, ate supper, and went to bed. (Tr. 230, 254). She said she made breakfast for her four daughters and prepared basic meals. (Tr. 231). However, she also reported that some days she could not do anything because she did not have the energy. (Tr. 236).

At the ALJ hearing, Plaintiff testified some days she could not get out of bed or take a bath due to her symptoms. (Tr. 41-42). She said she lived with her grandmother who cooked and cleaned for her and her four daughters. (Tr. 40, 270). She testified on "good days" she could wash dishes and make her bed and said she had been sober since May 8, 2009. (Tr. 41, 44-46).

<u>State Agency Opinions</u>

On September 23, 2009, state agency psychologist Alice Chambly, Psy.D., reviewed Plaintiff's medical records and assessed her mental functional capacity. (Tr. 424-41). Dr. Chambly adopted the mental residual functional capacity (RFC) finding from the earlier ALJ decision dated

January 18, 2008.¹ (Tr. 426, *referring to* Tr. 69-80). Dr. Chambly found Plaintiff had mild restrictions in activities of daily living and moderate difficulties maintaining social functioning and concentration, persistence, and pace, but no episodes of decompensation. (Tr. 438, *referring to* Tr. 74-75). Dr. Chambly also adopted the RFC finding for simple, routine work without high production quotas or piece work, no more than superficial interaction with coworkers, only occasional interaction with the public that did not include negotiation or confrontation, and no exposure to places where prescriptions were used and stored. (Tr. 426, *referring to* Tr. 75).

On December 21, 2009, state agency psychologist Irma Johnston, Psy.D., reviewed Plaintiff's medical records and affirmed Dr. Chambly's findings. (Tr. 542).

Treating Psychiatrists

Plaintiff saw treating psychiatrist Dr. Diane Smith in 2009 and 2010 for bipolar disorder. (Tr. 442-89). Plaintiff cancelled or skipped a number of appointments, including scheduled appointments for Risperdal injections. (Tr. 443, 481-82). On January 9, 2009, Dr. Smith noted "[Plaintiff] ha[d] been missing some appointments 'because of the holidays'", but Plaintiff said she would get back on track. (Tr. 443). Despite missing appointments, Plaintiff's speech was not pressured and she was goal-directed, euthymic, cooperative, pleasant, not suicidal, and her insight and judgment were fair, but she reported having racing thoughts "sometimes". (Tr. 443). On January 13, 2009, Plaintiff

---

1. Plaintiff had filed prior applications for SSI and disability insurance benefits (DIB) on March 4, 2004. (Tr. 69). On January 18, 2008, a prior ALJ found Plaintiff was not disabled. (Tr. 69). Pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and AR 98-4(6), an ALJ is bound by the residual functional capacity (RFC) determination found in the previous ALJ's decision absent new and material evidence. In the instant case, the ALJ found there was new and material evidence that warranted a *de novo* determination of Plaintiff's RFC. (*See* Tr. 14).

3

reported she was "not going to college now [un]til later and she [was] thinking about going to Florida with her boyfriend for a few days or a week." (Tr. 481). Despite not taking medication, Plaintiff was sleeping well and her mental health was stable. (Tr. 481). In February 2009, Plaintiff missed two appointments for Risperdal injections and showed up unscheduled requesting an injection despite denying symptoms. (Tr. 482).

In May 2009, Plaintiff told Dr. Smith she was voluntarily checking into rehab because she was afraid she might relapse. (Tr. 447). She declined to continue Risperdal injections while in rehab. (Tr. 447). On examination, her speech was not pressured and she was goal-directed, cooperative, and pleasant. (Tr. 447). She said she experienced racing thoughts "sometimes" and was "sometimes" depressed, but was "pretty good" that day. (Tr. 447).

In July 2009, Plaintiff said she stopped taking Xanax because her panic attacks went away, and she was not taking Seroquel or Risperdal because of pharmacy logistics. (Tr. 445). Despite not taking medication, her mood was "pretty good", although she said racing thoughts were "just starting to kick in." (Tr. 445). She was cooperative and pleasant, denied suicidal ideation, and her mood was stable. (Tr. 445, 477). In September 2009, Plaintiff was in a positive mood, responded well to the Risperdal injections, and said she was taking her medication and did not have racing thoughts "as much as before." (Tr. 469-71).

In October 2009, Plaintiff complained of racing thoughts and exhibited "very mildly pressured" speech. (Tr. 455). She was cooperative and pleasant and denied suicidal ideation. (Tr. 455). Her medication was adjusted upon request. (Tr. 455). At a later appointment in October 2009, Plaintiff was doing much better and her goals were to increase self-esteem and maintain sobriety.

4

(Tr. 457). She was assigned a global assessment of functioning (GAF) score of 65[2]. (Tr. 488).

In November 2009, Plaintiff reported sleeping about fourteen hours a day and thought it was because her Wellbutrin was discontinued. (Tr. 461). She said she went to AA meetings five times a week but felt "down in the dumps" from "just everyday stuff." (Tr. 461). She said she "always" experienced racing thoughts, but was cooperative and pleasant and her speech was not pressured. (Tr. 461). Later that month, Plaintiff was doing "much better", and had been working out and lost five pounds. (Tr. 463). She said she was "self-medicating and it [was] working out great." (Tr. 463). Notes indicated "[Plaintiff] [was] taking her medication but not the way it was prescribed". (Tr. 463). On August 21, 2010, Plaintiff was discharged from treatment because her goals were met. (Tr. 487).

On December 30, 2010, Plaintiff's psychiatrist Dr. Nalani Morris filled out a medical source statement assessing Plaintiff's mental capacity. (Tr. 590-91). She found Plaintiff had a "poor" ability to function in various areas of concentration, attendance, and interaction. (Tr. 590-91). The form defined poor as "ability to function is significantly limited." (Tr. 590). Dr. Morris found Plaintiff had a fair ability to follow work rules, use judgment, function independently without supervision, socialize, and understand, remember, and carry out simple job instructions. (Tr. 590-91). Fair was defined as "moderately limited but not precluded." (Tr. 590). She had a good ability to maintain her appearance. (Tr. 591). When asked to provide clinical findings to support the assessment, Dr. Morris merely indicated Plaintiff's symptoms varied day to day, she could not leave the house some days,

---

2. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

5

and she was very inconsistent with her appointments. (Tr. 591).

Phoenix Rising Behavioral Health Care

Plaintiff was treated at Phoenix Rising Behavioral Healthcare (Phoenix) for anxiety, bipolar, and dependent personality disorders. (Tr. 520, 524). Plaintiff experienced a variety of symptoms ranging from a "flying" feeling (Tr. 299) to difficulty maintaining sleep, feeling depressed, and having no energy. (Tr. 492, 520, 561, 576). Numerous examinations noted Plaintiff's racing thoughts, pressured speech, and visible signs of anxiety. (Tr. 299, 344, 523, 530, 560, 586). Plaintiff was prescribed various anti-depressant and anti-anxiety medications throughout her alleged disability period, including Xanax, Depakote, Buspar, Paxil, Wellbutrin, and Zyprexa. (Tr. 281-89, 302, 338, 558). Beginning in March 2008, Plaintiff reported to Phoenix every two weeks for Risperdal injections. (Tr. 296, 302).

Plaintiff's treatment records showed improvement in her symptoms of anxiety and depression when she was medication compliant and attended counseling sessions. (Tr. 584). She reported injections reduced her racing thoughts and improved her focus (Tr. 299, 314, 343, 503, 507, 515), and she maintained a positive mood despite stressors marked by issues with homelessness after a house fire and custody disputes. (Tr. 473, 477, 506-07, 515, 543, 550, 554, 584).

Treatment records also revealed a history of non-compliance with medication and attending appointments, having cancelled or "no-showed" on various occasions. (Tr. 305, 309-310, 338, 339-40, 343, 392-94, 397-98, 445, 502, 562-63, 575). While several 2010 treatment notes reflected Plaintiff's increased anxiety and inability to sleep, she indicated she stopped using medications and acknowledged not keeping appointments for injections. (Tr. 557, 561, 565-66, 586).

ALJ Hearing and Decision

At the ALJ hearing, the VE testified Plaintiff's past relevant work included cleaner, waitress,

6

and home health aide. (Tr. 55-56). The ALJ asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience who was limited to: simple, routine, and repetitive tasks performed in a work environment free of fast paced or high production requirements and no piece work; superficial interaction with co-workers, defined as being able to be around co-workers but only occasional conversations and interpersonal interaction; occasional interaction with the public with no negotiation or confrontation; and no work in an area where prescriptions were used or stored. (Tr. 56-57). The VE responded that according to the *Dictionary of Occupational Titles* (DOT) such an individual would be able to perform Plaintiff's past work as a cleaner, or other jobs such as kitchen helper, dining room attendant, or laundry worker. (Tr. 57).

Plaintiff's counsel then asked the VE whether these jobs would be available if the individual would miss five or more days per month due to psychologically based symptoms. (Tr. 58). The VE said no jobs would be available in those circumstances. (Tr. 58).

On January 24, 2011, the ALJ found Plaintiff had the severe impairments of anxiety, bipolar, and dependent personality disorders and a history of polysubstance dependence, but concluded she was not disabled. (Tr. 16).The ALJ noted Plaintiff had mild restrictions in activities of daily living because her written statements showed no difficulty attending to personal care, and field office staff and counselors consistently noted Plaintiff was generally well-groomed and appropriately dressed. (Tr. 17). She also left home for a variety of activities, could make basic meals, and on "good days" made her bed and washed dishes. (Tr. 17).

The ALJ found Plaintiff had moderate difficulties in social functioning and concentration, persistence, and pace. (Tr. 17). The ALJ pointed to Plaintiff's statements that she was manic and needed reminders to take medications; yet, she otherwise indicated she attempted to read as much as possible, could follow instructions, and had the foresight to call ahead when she was late for an

7

appointment. (Tr. 17).

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC determination. (Tr. 19). The ALJ noted Plaintiff's consistent diagnoses and symptoms of anxiety, bipolar, and dependent personality disorders. (Tr. 19). She commended Plaintiff on her sobriety and noted her work history. (Tr. 20). However, the ALJ pointed to Plaintiff's testimony of panic attacks conflicting with sparse reports of such symptoms. (Tr. 20). The ALJ also pointed to Plaintiff's medication non-compliance and noted her symptoms improved and she was stable when she took medication as prescribed. (Tr. 20-21).

The ALJ gave significant weight to the opinions of state agency psychologists Drs. Chambly and Johnston. (Tr. 21). The ALJ acknowledged the basis of those opinions was an adoption of the RFC in a prior ALJ's decision, but noted these opinions were well supported by the evidence in the instant case. (Tr. 21). The ALJ explicitly rejected treating psychiatrist Dr. Morris's opinion because Dr. Morris provided "no medically supported rationale" and did not account for the apparent improvement in Plaintiff's symptoms shown in the treatment records. (Tr. 21-22). The ALJ also discussed Plaintiff's relatively short treatment relationship with Dr. Morris, noting Plaintiff's long-time psychiatrist had been Dr. Smith. (Tr. 22).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as

8

a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One

through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred by failing to assign a specific weight to treating psychiatrist Dr. Morris's opinion. (Doc. 13). Plaintiff also argues the ALJ inaccurately assessed her credibility and improperly relied on a hypothetical question which failed to address Plaintiff's purported limitations. (Doc. 13).

### **Treating Physician Rule**

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242.

A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d

10

541, 544 (6th Cir. 2004)). When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 416.927(c). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship – length, frequency, nature and extent; (3) supportability – the extent to which a physician supports his findings with medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; and (5) specialization. *Id.*; *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. An ALJ"s reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F. 3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409–10 (6th Cir. 2009).

Good reasons are required even when the conclusion of the ALJ may be justified based on the record as a whole. The reason-giving requirement exists, in part, to let claimants understand the disposition of their cases, particularly in cases where a claimant knows her physician has deemed her disabled and might be bewildered when told by an ALJ she is not, unless some reason for the agency's decision is supplied. *Wilson*, 378 F.3d at 544 (quotations omitted). "The requirement also ensures the ALJ applied the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id*.

Despite acknowledging that the ALJ "rejected" treating psychiatrist Dr. Morris's opinion, Plaintiff argues the ALJ failed to state the weight she gave to the opinion. Plaintiff is playing semantics. The definition of reject is "to refuse to accept, consider, submit to, take for some purpose,

11

or use." *Reject Definition*, Merriam-Webster Dictionary, available at http:/www.merriam-webster.com/dictionary/reject (last visited August 28, 2013). Given this elementary definition, the ALJ was "sufficiently specific" that he was assigning "no weight" to Dr. Morris's opinion based on his explicit rejection of the same.

The ALJ also provided good reasons for rejecting Dr. Morris's opinion. First, the ALJ noted Dr. Morris gave no medically supported rationale for her opinion. (Tr. 21). Indeed, when asked to provide support for her restrictions, Dr. Morris merely wrote that Plaintiff's symptoms varied, she was very inconsistent with her appointments, and she did not leave the house on some days. (Tr. 591). The ALJ also noted Plaintiff's long course of treatment with Phoenix and that her long-time psychiatrist was Dr. Smith, not Dr. Morris. (Tr. 22). In turn, the ALJ noted Dr. Morris's opinion did not comport with multiple indications in the record that Plaintiff's condition improved when she complied with her treatment regimen. (Tr. 22).

Plaintiff also argues the ALJ improperly relied on Dr. Smith's GAF scores in rejecting Dr. Morris's opinion because a GAF score has no "direct correlation to the severity requirements of the mental disorder listings." (Doc. 13, at 10); *Deboard v. Comm'r of Soc. Sec.*, 211 F. App'x 411 (6th Cir. 2006). However, the ALJ did not use the GAF score to determine the severity of a mental listing; rather, the ALJ used Dr. Smith's GAF score to show it conflicted with Dr. Morris's assessment of Plaintiff's functional limitations. Namely, that Dr. Smith assigned Plaintiff a GAF score indicating only mild functional limitations, but Dr. Morris, who had a substantially shorter treatment relationship with Plaintiff, otherwise concluded Plaintiff functioned poorly in several categories of concentration, attendance, and interaction. (Tr. 590-91); *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011) (the Sixth Circuit views GAF scores as "a subjective determination that represents the clinician's judgment of the individual's overall level of

12

functioning"). Therefore, the ALJ did not err by using Dr. Smith's GAF score – which represented her judgment of Plaintiff's functioning – to contradict Dr. Morris's more restrictive assessment.

The ALJ directly cited and addressed Dr. Morris's opinion and rejected it. (Tr. 21-22). The ALJ relied on three factors in giving Dr. Morris' opinion no weight: lack of support, inconsistency with the record, and length of treatment relationship. (Tr. 21-22); § 416.927(c)(1)-(6). Accordingly, the ALJ did not err in her assessment of Dr. Morris's opinion.

Last, Plaintiff argues the ALJ erred by giving state agency reviewers Drs. Chambly and Johnston significant weight. However, "the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011). This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(d),(f); SSR 96–6p at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp. 2d at 823-24. Here, the ALJ gave significant weight to Drs. Chambly and Johnston because their opinions were well supported by the case record. Based on the ALJ's analysis of Plaintiff's improvement when she complied with her treatment regimen, Phoenix treatment records, and Dr. Smith's treatment notes, the ALJ's conclusion is supported by substantial evidence.

**Credibility**

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also

13

consider and weigh medical opinions. *Id.* § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1.

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

    (i) [A claimant's] daily activities;

    (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

    (iii) Precipitating and aggravating factors;

  (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;

  (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;

  (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and

  (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

  Plaintiff contends the ALJ failed to provide "specific reasons for [her] credibility finding". (Doc. 13, at 15). Not so. The ALJ expressly considered Plaintiff's subjective complaints in accordance with Social Security Ruling (SSR) 96-7p and 20 C.F.R. § 416.929. (Tr. 18-19). The ALJ discussed Plaintiff's testimony and function reports, then set forth the various factors she considered in her credibility assessment, including specific citations to medical records and opinions, clinical findings, treatment regimen, medication use, and activities of daily living. (Tr. 19-22). The ALJ noted Plaintiff's tendency to miss appointments and cease using medication without direction, along with her symptom improvement during times of medication compliance. (Tr. 19-22). These factors were specific and sufficiently detailed and supported the ALJ's assessment of Plaintiff's credibility.

**Mental Limitations in ALJ's Hypothetical and VE Response**

  Plaintiff cites *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) to argue the ALJ did not accurately convey Plaintiff's concentration, persistence, and pace limitations in the hypothetical proposed to the VE. In order for a VE's testimony in response to a hypothetical question to serve as substantial support for the conclusion a claimant can perform other work, the hypothetical must accurately portray a claimant's physical and mental impairments. *Ealy*, 594 F.3d at 504 (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)). In *Ealy*, the Sixth

15

Circuit found the functional restrictions recited in an ALJ's hypothetical question insufficient to accommodate the claimant's medically-established difficulties in concentration, persistence, and pace because the hypothetical omitted speed- and pace-based restrictions completely and instead only limited the individual to simple, repetitive tasks. *Id.* at 516. This prevented the VE's testimony from being substantial support for the Commissioner's decision at step five.

"[T]here is a body of case law supporting the proposition that hypotheticals limiting claimants to jobs entailing *no more* than simple, routine, and unskilled work are not adequate to convey moderate limitations in ability to concentrate, persist, and keep pace." *Johnson v. Astrue*, 2010 WL 5559542, at *8 (N.D. Ohio 2010) (emphasis added); *see also, e.g., Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."). Plaintiff also cites *Green v. Comm'r of Soc. Sec.*, 2009 WL 2365557, at *10 (E.D. Mich. 2009) to argue it is insufficient to simply include a hypothetical "of unskilled jobs with limited contact with co-workers and the public" when considering moderate concentration difficulties.

However, in the instant case the ALJ did provide "additional limitations" as required by *Ealy* and its progeny. Indeed, in addition to simple, routine, and repetitive work restrictions, the ALJ specifically included pace, persistence, and concentration-related restrictions prohibiting fast pace, high production quotas, and piece work, and limiting Plaintiff to superficial contact with co-workers and the public to accommodate her moderate difficulties. (Tr. 18). Accordingly, Plaintiff's contention that the ALJ's hypothetical restrictions were insufficient lacks merit.

Plaintiff also asserts the ALJ erred by failing to confirm whether the VE's testimony was consistent with the DOT. To the contrary, the ALJ specifically asked the VE to let her know if her testimony conflicted with the DOT, and the VE confirmed she would. (Tr. 55). Furthermore, the VE

16

couched all of her testimony in DOT context, using DOT classifications and job numbers when identifying Plaintiff's past relevant work and other jobs that would accommodate her restrictions and vocational profile. (Tr. 55-59).

Moreover, when cross-examining the VE, Plaintiff's counsel did not inquire as to whether the VE's testimony conflicted with the DOT. Plaintiff's counsel had an affirmative obligation to question the VE if he or she believed a conflict existed between the VE's testimony and the DOT. *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("nothing in applicable Social Security regulations requires the [ALJ] to conduct his or her own investigation into the testimony of a [VE] to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the [ALJ]."). Indeed, even now Plaintiff does not assert the VE's testimony was inconsistent with the DOT. Accordingly, the ALJ did not err.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

    s/James R. Knepp, II
United States Magistrate Judge